UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

VALDEN DEVONE WHITE,

                    Plaintiff,                          Case No. 1:22-cv-643

v.                                                      Honorable Robert J. Jonker

SCOTT MILLER et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has filed a brief, but dense, complaint wherein he sues eleven (or more) defendants relating to events at the Carson City Correctional Facility (DRF) that occurred during 2020 and 2021.

Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined all parties except for DRF Prisoner Counselor Scott Miller, DRF Resident Unit Manager Unknown Blair, Unknown Party #1 the MDOC Parole Board members, and DRF Warden Randee Rewerts. Additionally, the Court will dismiss Plaintiff's claims against Defendant Rewerts that arise out of the May, 2020 or July 2021 assaults because they are transactionally unrelated to his claims related to parole denial.

Moreover, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C.

§ 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Miller, Blair, the "Parole Board members," and Rewerts for failure to state a claim upon which relief may be granted.

## Discussion

### I.    Factual Allegations

During the time period covered by Plaintiff's complaint, 2020 and 2021, Plaintiff was incarcerated with the Michigan Department of Corrections (MDOC) at DRF. He is presently incarcerated at the Ionia Correctional Facility in Ionia, Michigan. Plaintiff separates his complaint into five "Issues." (Compl., ECF No. 1, PageID.6–10.)

#### A.    July 2021 Assault (Issue 1)

Plaintiff's first issue relates to a claim that on July 5, 2021, because Plaintiff is an "avid grievance writer," DRF Correctional Officer Unknown Crater threatened to "get" Plaintiff. (Compl., ECF No. 1, PageID.6.) Thereafter, around noon, Plaintiff alleges that a protective custody inmate came to Plaintiff's general population cell door and threatened to assault Plaintiff. Plaintiff promptly complained to DRF Sergeant Unknown Sims. Plaintiff asked to be moved, but Sims did nothing.

Ten minutes later, Defendant Crater opened Plaintiff's cell door. Plaintiff claims that Crater opened the cell door to permit the protective custody inmate to assault Plaintiff. Instead, Plaintiff ran out of the cell and beat the protective custody inmate. Plaintiff claims that Crater failed to protect Plaintiff by mixing protective custody and general population inmates.

While attempting to break up the fight, Officer Unknown Palmer tased Plaintiff above the eye. "They" refused to take Plaintiff to the hospital. (*Id.*) DRF Registered Nurse Jane Doe

2

administered care but failed to refer Plaintiff to a doctor for further care. Later that day, Defendant Crater seized Plaintiff's personal property.

Plaintiff alleges that DRF Warden Randee Rewerts is liable as a supervisor, for not upholding his policies, for denying all grievances, and for covering up for his officers.

Plaintiff's allegations implicate his rights under the First, Eighth, and Fourteenth Amendments.

### B.    May 2020 Assault (Issue 2)

Plaintiff alleges, again, that he is an avid grievance writer and, therefore, "a target." (*Id.*, PageID.7.) Plaintiff claims that DRF Assistance Deputy Warden Jane Doe purposefully avoided knowledge of a high assault risk by housing Plaintiff—a non-violent offender—in Level IV custody with lifers and highly violent offenders. On May 18, 2020, Defendant ADW Doe's disregard of the risk to Plaintiff came to fruition when he was assaulted by a lifer with a lock. DRF Officer Unknown Bellinger found Plaintiff on the ground but interfered with medical care. DRF Warden Randee Rewerts denied Plaintiff's grievances, failed to uphold the MDOC's policies, and committed "supervisory." (*Id.*)

Plaintiff's allegations implicate his rights under the First and Eighth Amendments.

### C.    November 28, 2021, Adverse Parole Board Ruling-Privacy Act (Issue 3)

Plaintiff alleges that the MDOC Parole Board[1] violated the Privacy Act by denying Plaintiff parole based on inaccurate information, specifically based on charges that appear in his

---

[1] Plaintiff describes the actions of the MDOC Parole Board as if the entire board acts with respect to particular parole decisions. He does not actually name the board as a party, he names the collective group of members. Whether the Defendant sued is the MDOC Parole Board or each of its members, as set forth fully below, Plaintiff has failed to state a claim for violation of the Privacy Act or for violation of his due process rights. The defenses of immunity and that the board is not a "person" within the meaning of § 1983 apply only to the MDOC Parole Board and not the individual members.

3

presentence investigation report, even though the charges were dismissed. Plaintiff claims that DRF Warden Randee Rewerts is liable for denying Plaintiff's grievances on the matter and for failing to uphold his policies.

Plaintiff alleges the parole board is liable under the Privacy Act for damages for keeping Plaintiff incarcerated past his earliest release date.

### D. November 28, 2021, Adverse Parole Board Hearing-Denial of Hearing (Issue 4)

Plaintiff alleges that the MDOC Parole Board violated Plaintiff's right to a hearing by denying him parole without an interview or hearing. Plaintiff claims that DRF Warden Randee Rewerts is liable for denying Plaintiff's grievances on the matter, for failing to uphold his policies, and for "committing supervisory." (*Id.*, PageID.9.)

Plaintiff seeks damages of $100,000 for violating the right to a hearing, and $175 per day for each day Plaintiff is incarcerated past his earliest release date.

### E. September 3, 2021, Approval of Inaccurate Parole Eligibility Report (Issue 5)

Plaintiff alleges that DRF Prisoner Counselor Scott Miller and DRF Resident Unit Manager Unknown Blair violated the Privacy Act when they failed to update Plaintiff's parole eligibility report to remove a reference to dismissed criminal sexual conduct charges as provided by court order. Plaintiff claims that DRF Warden Randee Rewerts is liable for denying Plaintiff's grievances on the matter, for failing to uphold his policies, and for "committing supervisory." (*Id.*, PageID.10.)

Plaintiff seeks damages of $100,000 for violating the right to a hearing, and $175 per day for each day Plaintiff is incarcerated past his earliest release date.

## II.     Misjoinder

Plaintiff's allegations can be separated into three distinct groups: allegations related to the July, 2021 assault (Issue 1); allegations related to the May, 2020 assault (Issue 2), and claims related to the denial of parole during the fall of 2021 (Issues 3, 4, and 5).

### A.     Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v.*

*Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D

failed to pay a debt, and E infringed his copyright, all in different transactions—
should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166,

168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the

three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998)

(declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes'

barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983

suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001)

(declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing

fee, because it "would improperly circumvent the express language and clear intent of the 'three

strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's

request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to

circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of

obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and

Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions.

Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*,

635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to

permit the Court to determine whether joinder is proper. In Plaintiff's complaint, the Court can

discern no particular rhyme or reason for the order in which he presents Defendants in the case

caption or the order in which he presents his claims in the body of his complaint. And the two

options Plaintiff presents—the caption order or the order in which he presents the claims—are not

consistent.[2] Because the joinder analysis is properly applied first with regard to joinder of parties, however, the Court will address the matter as Plaintiff first presents it: the caption order.

Plaintiff first names Defendant Miller. Plaintiff sues Defendant Miller for violation of the Privacy Act during September of 2021, which resulted in the denial of parole. Plaintiff may join to his Privacy Act claim against Miller other claims against Miller (but he alleges no other claims against Miller) and claims against other Defendants that are transactionally related to his claims against Miller. Plaintiff's claim against Defendant Blair arises out of the same transaction or occurrence as his claim against Miller; both arise out of those Defendants' failures to correct the parole eligibility report. Moreover, Plaintiff's claim that Defendant Rewerts is liable as the supervisor of Miller and Blair also arises out of the same transaction or occurrence. Plaintiff's claims against the MDOC Parole Board are certainly transactionally related to the claims against Blair, Miller, and Rewerts. Moreover, Plaintiff's claims regarding Defendant Rewerts for denying grievances, failing to follow policy, and failing to properly supervise the parole board, no matter how factually or legally misguided they might be, are also transactionally related to the parole denial. But that is as far as the transactional relationship goes. There are no allegations in Plaintiff's complaint that support an inference that the parole denial claims are related in any way to the May, 2020 assault claims or the July, 2021 assault claims. The Defendants that are named exclusively with regard to those claims, therefore, are misjoined.

**B.    Remedy**

Because the Court has concluded that Plaintiff has improperly joined to this action multiple Defendants and the claims against them, the Court must determine an appropriate remedy. Under

---

[2] A third possible order would be chronological, but neither the caption order of the parties or the order in which the claims are presented tracks that approach.

Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws

§ 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's first allegations relating to his time at DRF arise during May of 2020. Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *see*

*Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against the other Defendants from DRF and he will not suffer gratuitous harm if claims against these Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop the Defendant named exclusively with regard to the May, 2020 assault (Unknown Party #4 DRF Assistant Deputy Warden Jane Doe) as well as the Defendants named exclusively with respect to the July, 2021 assault (Unknown Party #2 John Doe, Unknown Palmer, Unknown Crater, Unknown Sims, Unknown Party #3 Registered Nurse Jane Doe, and Unknown Bellinger), dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same). Additionally, the Court will dismiss Plaintiff's claims against Defendant Rewerts that arise out of the May, 2020 or July 2021 assaults because they are transactionally unrelated to his claims related to parole denial.

If Plaintiff wishes to proceed with the dismissed claims, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee. Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. For example, there are no allegations in Plaintiff's complaint that would support a relationship between the May, 2020 and the July, 2021 assault, so joinder of those claims in one suit would also be improper. Plaintiff is cautioned that failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

11

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    The MDOC Parole Board is immune from suit

In *Fleming v. Martin*, 24 F. App'x 258 (6th Cir. 2001), the Sixth Circuit Court of Appeals considered whether the MDOC Parole Board was immune from suit under § 1983:

> The Parole Board is entitled to Eleventh Amendment immunity. Unless immunity is expressly waived, a state and its agencies are immune from an action for damages and injunctive relief. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). The Parole Board is an entity within the MDOC, *see* Mich. Comp. Laws § 791.231a, and the MDOC is, in turn, an administrative agency within the executive branch of Michigan's government. *See* Mich. Const. 1963, art. 5, § 2; *In re Parole of Bivings*, 242 Mich. App. 363, 619 N.W.2d 163, 167–68 (Mich. Ct. App. 2000). Accordingly, the Parole Board is immune from suit under the Eleventh Amendment.

*Fleming*, 24 F. App'x at 259; *see also Goree v. Michigan Parole Board*, No. 19-1817, 2019 WL 7606229, at *1 (6th Cir. Nov. 15, 2019) ("[A]s an agency of the State of Michigan, the Board was entitled to Eleventh Amendment sovereign immunity from suit under § 1983."); *Lee v. Michigan Parole Board*, 104 F. App'x 490, 492 (6th Cir. 2004) ("Lee's claims against the MPB . . . are barred by the Eleventh Amendment.").

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, neither the State of Michigan, acting

13

through the MDOC Parole Board, nor the MDOC Parole Board are "persons" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Accordingly, Plaintiff fails to state a cause of action for money damages under § 1983 against the MDOC Parole Board.

### B.      Claims under the Privacy Act

Plaintiff claims that Miller, Blair, and the MDOC Parole Board have violated the Privacy Act. (Compl., ECF No. 1, PageID.8, 10.) The Court construes Plaintiff's reference to the Privacy Act as a reference to 5 U.S.C. § 552a, which imposes requirements on government agencies to maintain accurate records, appropriately correct and amend those records, and limit disclosure of those records. The act, however, as Plaintiff seeks to apply it, "applies exclusively to federal agencies." *Schmitt v. City of Detroit*, 395 F.3d 327, 331 (6th Cir. 2005). Therefore, Plaintiff has failed to state a claim under the Privacy Act or a claim under 42 U.S.C. § 1983 for violation of the Privacy Act.

### C.      Claims against Rewerts for violating MDOC policy

Plaintiff contends that Defendant Rewerts failed to uphold the MDOC's policies. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or MDOC policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendant Rewerts violated the MDOC's policies therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.

14

*See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's claims related to state-law or MDOC policy violation claims will be dismissed without prejudice.

### D.    Claims against Rewerts for supervisory liability

Beyond those state law violations, Plaintiff fails to allege that Defendant Rewerts took any action against him, other than to suggest that Defendant Rewerts failed to adequately supervise his subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567,

575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Rewerts encouraged or condoned the conduct of his subordinates, or authorized, approved or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Rewerts was personally involved in the events surrounding the denial of Plaintiff's parole. Conclusory allegations of unconstitutional conduct without specific factual

allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action against Rewerts—other than state law claims—is premised on nothing more than respondeat superior liability, his action fails to state a claim.

### E.  Plaintiff has no federal constitutional right to particular parole procedures or release on parole

Plaintiff claims he was wrongfully denied parole. He indicates the denial was wrongful because it depended upon inaccurate information, because it occurred without an interview, and because he was not afforded a hearing. But Plaintiff has no federal right to parole or even any particular parole procedures.

Construed liberally, Plaintiff's allegations implicate his right to due process under the Fourteenth Amendment. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.

There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Under this authority, until Plaintiff has served his maximum sentence he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The MDOC Parole Board's failure or refusal to consider Plaintiff for parole or the interference of Defendant Miller or Defendant Blair with Plaintiff's parole prospects, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for violation of his due process rights.

### F.    Part of Plaintiff's damage claim is barred by the *Heck* doctrine

Plaintiff's claim that the denial of parole was somehow wrongful, and that he is entitled to damages of $175 per day for each day he is incarcerated past his earliest release date, necessarily implies that he is not simply seeking a new hearing. He specifically contends that he should have

18

been released.[3] His damage request indicates that his claim would be barred by the doctrine of *Heck v. Humphrey*, 512, U.S. 477, 486–87 (1994).

In *Heck*, the Supreme Court held that "to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646–48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189–90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

---

[3] A claim actually seeking release is not cognizable under § 1983. "The Supreme Court has held that release from confinement—the remedy petitioner[ ] seek[s] here—is 'the heart of habeas corpus.'" *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020), (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973)). A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to Section 1983. *See Preiser*, 411 U.S. at 484 (holding that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody).

But *Heck* speaks to convictions and sentences, not parole. Thus, at first blush, it might not appear that the *Heck* doctrine would apply to bar Plaintiff's challenge to his parole procedures. But the Sixth Circuit has explained that *Heck* bars a challenge in a parallel circumstance:

> When a prisoner is challenging parole procedures, he may bring a § 1983 action for damages. *See Anyanwutaku v. Moore*, 151 F.3d 1053, 1055–56 (D.C. Cir. 1998). However, Munofo's allegations of procedural defects are clearly an attempt to challenge the substantive result in the parole hearing. Thus, Munofo's § 1983 claim is not cognizable under *Heck* because "a judgment in favor of the plaintiff would necessarily imply the invalidity" of the parole detainer at issue here. *Heck*, 512 U.S. at 487. Munofo has not demonstrated that he has successfully challenged his detention through the appropriate remedies.

*Munofo v. Alexander*, 47 F. App'x 329, 330–31 (6th Cir. 2002). The court concluded that Munofo was required to succeed on a state court challenge to the detainer before he could pursue relief under Section 1983. Because Munofo had failed to do so, he could not proceed with a claim for relief under Section 1983. Similarly here, Plaintiff must succeed on a state challenge to the parole denial—there is no federal basis for such a challenge for the reasons stated above—before *Heck* would permit him to seek damages for a wrongful denial.

## Conclusion

Having reviewed Plaintiff's complaint under Rule 21, the Court concludes that Plaintiff has misjoined most of the Defendants he names in this action. The Court will drop as parties misjoined Defendants Unknown Party #4 DRF Assistant Deputy Warden Jane Doe, Unknown Party #2 John Doe, Unknown Palmer, Unknown Crater, Unknown Sims, Unknown Party #3 Registered Nurse Jane Doe, and Unknown Bellinger. The Court will dismiss Plaintiff's claims against them without prejudice. The Court will also dismiss without prejudice as misjoined Plaintiff's claims against Defendants Rewerts relating to the May, 2020 assault and the July, 2021 assault.

With regard to the arguably properly joined claims that remain against Defendants Miller, Blair, Unknown Party #1 the MDOC Parole Board, and Rewerts, the Court has conducted the review required by the Prison Litigation Reform Act and determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss without prejudice Plaintiff's state-law claims because the Court declines to exercise supplemental jurisdiction over them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

A judgment consistent with this opinion will be entered.


Dated:   __August 24, 2022__                    __/s/ Robert J. Jonker__
                                                Robert J. Jonker
                                                United States District Judge